Argued November 28, 1972, reversed February 20, 1973

HILL ET UX, *Appellants, v.* MARION COUNTY
BOARD OF COMMISSIONERS ET AL,
*Defendants,* GEARHART, *Respondent.*

506 P2d 519

*Bruce W. Williams,* Salem, argued the cause and filed the brief for appellants.

*Norma Paulus,* Salem, argued the cause for respondent. With her on the brief were Paulus & Callaghan, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

This is a land use case. Plaintiffs have appealed from a circuit court order sustaining action of the Marion County Board of Commissioners and the Marion County Planning Commission which allowed a variance under the Marion County Uniform Zone Code pertaining to a particular piece of property in an RA (residential agricultural) zone.

The fundamental question is whether a variance could be validly granted in such a zone to allow a home-school for about 30 mentally retarded, educable children.

Sally Gearhart sought to establish such a home-school in a rural setting where animals could be kept and there would be approximately five acres of

ground. She produced evidence which indicates that there is a critical need in Marion County on account of a constant population of mentally retarded, educable children for several such homes and that none exist.

Evidence indicated that she had made efforts to find other property upon which she could establish such a home but had been unable to find a suitable location. The use envisioned by Mrs. Gearhart is not specifically provided for by the Marion County Uniform Zone Code. The only use category under which her use would be permitted without the grant of a variance appears to be that of a group care home. Under the county zoning ordinance the only zone in which such a group care home is allowed is RM (residential-multiple). The only areas zoned RM are urban, where density of population precludes the rural atmosphere which the testimony indicated is desirable for the establishment planned by Mrs. Gearhart.

She located and acquired the property which is the subject of this proceeding and applied under the county zoning ordinance for a conditional use of a conditional home occupation to implement her plan. The Planning Commission and the county granted the conditional use. However, the conditional use section of the zoning ordinance provides:

"120.075. CONDITIONAL HOME-OCCUPA-TION provided:

"(a) The occupation or activity be carried on solely by the resident of a dwelling as a secondary use, in connection with which no assistants are employed.

"(b) No structural alterations are made to accommodate such occupations, the residential char-

acter of the buildings and property remains unchanged, and traffic attracted to the premises be kept at a minimum.

"(c) The business or activity shall be conducted wholly within the home or within a small (not greater than ½ the floor area of the house) accessory building, residential in appearance.

"* * * * *."

Each of the above-quoted subsections would of necessity more or less be violated if the project were completed, for her plan calls for building of two dormitory wings on the existing dwelling and for remodeling of the barn on the property to make it fit for classroom space. She also contemplates the hiring of assistants. Faced with these prohibitions she petitioned the Planning Commission for a variance under the zoning ordinance which would allow her the conditional use of the premises granted without complying with Section 120.075 (a), (b) and (c). The variance was granted. Sections 122.010 and 122.020 of the zoning code provide authority and guidelines for allowing variances:

"122.010. POWER TO GRANT VARIANCES. Subject to the restriction and provisions contained in this ordinance, the planning commission shall have the power to vary or modify the strict application of any of the regulations or provisions of this ordinance in any case where such strict application would result in practical difficulties or unnecessary hardships with reference to requirements governing: lot area, lot width, percentage of lot coverage and number of dwelling units or structures permitted on a lot, height of structures, location, yards, signs, parking and loading space, vision clearance and use of property.

"The power provided herein to the planning commission to grant variances from the strict appli-

cation of the provisions of this ordinance shall be used sparingly, within the limits granted the planning commission, within the spirit and intent of this ordinance, and applied reasonably to maintain and not abolish the distinctive classifications created by this ordinance."

"122.020. CONDITIONS FOR GRANTING A VARIANCE. The planning commission may permit and authorize a variance when it appears from the application, and the facts presented at the public hearing, and by investigation:

"(a) That there are unnecessary, unreasonable hardships or practical difficulties which can be relieved only by modifying the literal requirements of the ordinance;

"(b) That there are exceptional or extraordinary circumstances or conditions applying to the land, buildings, or use referred to in the application, which circumstances or conditions do not apply generally to land, buildings, or uses in the same zone; however, nonconforming land, uses, or structures in the vicinity shall not in themselves constitute such circumstances or conditions;

"(c) That granting the application will not be materially detrimental to the public welfare or be injurious to property or improvements in the neighborhood of the premises;

"(d) That such variance is necessary for the preservation and enjoyment of the substantial property rights of the petitioner;

"(e) That the granting of the application will not, under the circumstances of the particular case, adversely affect the health or safety of persons working or residing in the neighborhood of the property of the applicant; and

"(f) That granting of the application will be in general harmony with the intent and purpose of this ordinance and will not adversely affect any officially adopted comprehensive plan."

This proceeding is a declaratory judgment suit in which the plaintiffs, who are nearby property owners and residents, challenge the variance. No appeal was taken from or challenge directly made to the allowance of the conditional use. The action part of the trial court's order states that the "orders" of the Board of County Commissioners are affirmed, but it obviously referred only to the one order before it.

■ The effect of the variance granted in this case is to allow a use in an RA zone that would otherwise not be permitted. This is so despite the fact that at the time the variance was granted the conditional use had already been approved, because the effect of the grant of the variance was to alter the very nature of the use permitted by the granting of the conditional use. As such the type of variance granted in the case at bar is classified as a "use" variance as distinguished from an "area" variance which would not allow an otherwise prohibited use in the zone. *Cf.* 2 Rathkopf, Zoning and Planning 45-16 through 45-29 (3d ed 1966); 2 Anderson, American Law of Zoning 605, 610, §§ 14.09, 14.10 (1968); 2 Yokley, Zoning Law and Practice 161, § 15-9 (3d ed 1965).

In the discussion in the latter work, the author said, with reference to the "use" type of variance request:

> "Where there is no evidence of individual hardship, the board is without authority to grant a variance, and where it does so, its action will be set aside by the courts.

> "The Court of Appeals of New York, in an excellent opinion by Mr. Justice Conway, held that a zoning variance to permit erection of a commercial boat house, repair shop and boat dock in a resi-

dential district adjacent to a creek was improperly granted, where there was no proof that the property could not be adapted to conforming uses, and no attempt was made to sell the property for residential purposes, and the property did not suffer a unique or singular disadvantage not common to other property in the district through the operation of the zoning ordinance and where the proposed use would alter the essential character of an otherwise residential neighborhood. In the course of his opinion, Judge Conway said:

"* * * 'Moreover, the record does not show that the property suffers a unique or singular disadvantage, not common to other property in the district, through the operation of the zoning ordinance. Here, the hardship, if any, is general and characteristic of the entire area, and the remedy lies in a revision of the zoning ordinance through legislative action, not by the granting of a variance to a single property owner.' " 2 Yokley at 168-70.

The criteria set up for granting variances in Section 122.020(b) of the Marion County Uniform Zone Code creates essentially the same restriction emphasized by Yokley from the New York case (*Matter of Taxpayers' Assn. v. Board of Appeals,* 301 NY 215, 93 NE2d 645 (1950)); namely, that an exceptional circumstance applying to a use that will justify a variance may not be a circumstance that applies generally to uses in the same zone. The case at bar factually is distinguishable from the case discussed by Yokley because here there is no showing that the use applied for would alter the essential character of the neighborhood. However, this distinction does not alter the fact that here as in the case discussed there is no showing that the exceptional circumstances that affect the use planned by Mrs. Gearhart would not apply equally in a case involving a similar applicant in reference to

property in the same zone. *Erickson v. City of Portland,* 9 Or App 256, 261, 496 P2d 726 (1972).

■ There was substantial evidence of the need for a home-school for retarded, educable children of the kind planned by petitioner. But the showing of such need is not the equivalent of showing that the subject property suffered a unique disadvantage. Property in a rural setting generally suffered the disadvantage of not being zoned to permit this use. The record we have referred to discloses that a case was made that the public interest would be served by a zoning plan which would authorize home-schools of the kind envisaged by Mrs. Gearhart in RA areas of Marion County, at least as a conditional use. The actions of the Marion County Planning Commission and the Marion County Board of Commissioners indicate that they were persuaded of this need. Under the facts of this case, it is our opinion that the remedy lies in amending the zoning ordinance—not in granting a variance. *See* 2 Yokley, Zoning Law and Practice 187, § 15-13 (3d ed 1965); 2 Anderson, American Law of Zoning 668, § 14.32 (1968).

The defendants have argued that the decision to grant the variance is entitled to the "presumption of regularity." *Cf. Archdiocese of Port. v. Co. of Wash.,* 254 Or 77, 86, 458 P2d 682 (1969); *Bissell v. Bd. of Wash. County Comrs.,* 12 Or App 174, 506 P2d 499 (1973). In the case at bar the grant of the variance acts to permit a use in an RA zone that is neither authorized nor contemplated by the zoning ordinance. The "presumption of regularity" does not apply in this situation. *Archdiocese of Port. v. Co. of Wash.,* supra at 84-85.

We note that there is an apparent discrepancy

between the conclusion we reach here and the language of *Erickson v. City of Portland,* supra, which stated that the presumption of regularity applies to the grant of a variance. This discrepancy is more apparent than real, and is explained by the distinction between a "use" variance and an "area" variance discussed above. *Erickson* involved an "area" variance.

Reversed.