Argued and submitted August 17, reversed and remanded with instructions
October 24, 1984

## MORRISON,
*Petitioners,*

*v.*

## CITY OF PORTLAND,
*Respondent.*

(84-022; CA A32506)

689 P2d 1027

Steven L. Pfeiffer, Portland, argued the cause for petitioners. With him on the brief were Timothy V. Ramis and O'Donnell, Sullivan & Ramis, Portland.

No appearance by respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

Petitioners appealed to the Land Use Board of Appeals (LUBA) from the City of Portland's allowance of front and side setback variances that the applicants had sought to enable them to construct an addition to their residence. LUBA remanded to the city for "explanatory findings" about the meaning and application of its variance ordinance. The city did not permit petitioners and their attorney to offer argument or evidence at the hearing on remand. It allowed the variances again, and petitioners again appealed to LUBA. LUBA affirmed the city's decision. Petitioners appeal, contending that they were improperly denied the right to be heard and that the interpretation of the ordinances in the city's supplemental findings is erroneous. We reverse.

Section 33.98.010(b)(2)(B) of the Portland City Code provides that major variances are allowable if, in conjunction with other criteria:

> "The variance is required in order to allow enjoyment by the [applicant] of *a property right possessed by a substantial portion of the owners of properties in the same vicinity,* while resulting in the comparatively trivial detriment to the neighborhood." (Emphasis supplied.)

In the first appeal, LUBA concluded *inter alia* that the emphasized language is ambiguous and that the city's findings were unclear as to whether it interpreted the language "restrictively," *i.e.,* that the "property right" contemplated by the ordinance is only the right to enjoy *some* beneficial use, or more "permissively."[1] LUBA's order stated that whether the variances were permissible depended on what the intended meaning of the ordinance language was and that, in the absence of clarification by the city, LUBA could not "properly perform [its] review function."

On the remand from LUBA, the city made it clear that it interpreted the ordinance *very* permissively. The city's findings state, as relevant:

> "* * * Subsection 33.98.010(b)(2)B provides that a major

---

[1] Although LUBA identified some reasons why it found the ordinance itself to be ambiguous, it found other ambiguities in the city's findings applying the ordinance language. *See* note 3, *infra.*

variance may be granted when it is 'required' (needed) in order to allow enjoyment by the applicant of a property right possessed by a substantial portion of the owners of properties in the same vicinity, while resulting in comparatively little detriment to the neighborhood. As used in this section 'property right' may include such things as historial development of property in the vicinity and recognition of property development existing in the vicinity (neighborhood) through the granting of previous variances. Furthermore, the right applies to any development on the subject site, whether original or additional.

"As explained earlier in the findings, the applicants' home is part of a neighborhood built along a road with steep sloping sides. Also mentioned before is the fact that many of the homes, including the applicants' are at least fifty years old and were built prior to the enactment of zoning regulations limiting development close to the lot line. As a result, many of the homes in the vicinity have little or no front yard. The homes have been built as close as possible to the most level land in the area, the road. Due to timing and physical circumstances, reduced side and front yards are common in the neighborhood and are a right these homeowners have which is not shared generally in R7 zones throughout the City.

"Development pre-dating zoning restrictions and steep site limitations are the norm in the vicinity of the applicants' home. The City has recognized this reality and has granted at least five variances in this vicinity which reduced required front yards setbacks and lot depths. * * *

"However, since the applicable zoning requires larger yards and setbacks than are common in this neighborhood, these variances are required (needed) in order to permit the applicants to enjoy this property right which time and circumstances have given to a substantial number of property owners in the vicinity."

In effect, the city's interpretation of "property right" means that *all* property in the applicants' neighborhood may be used in the same variant manner that *particular* parcels have come to be used by virtue of previous variances and nonconforming uses that predated present zoning requirements. As petitioners argue, the interpretation appears to give the applicants a property right in the variance itself, rather than making the variance procedure a vehicle for substantiating an underlying rightful use. *See Lovell v. Independence Planning Comm.,* 37 Or App 3, 586 P2d 99 (1978). However, it

would be premature for us to decide whether petitioners are correct in contending that the city's interpretation of the ordinance is erroneous, because we conclude that the city's failure to allow petitioners to be heard following LUBA's remand requires that there be a second remand to the city. The city is entitled, if it chooses, to reconsider its interpretation of the ordinance at that time. *But see* note 3, *infra.*

The record of the city's proceedings on the remand from LUBA[2] shows that the city council's rationale for denying petitioners an opportunity to present argument was that the evidentiary record from the first hearing was complete and all that remained for the council to do was to make findings based on that record. LUBA agreed with the city and stated in its order deciding the second appeal that, "[i]n remanding the decision, we sought explanatory findings concerning the city's understanding of the existing standards, not the formulation of standards."

Petitioners argue that the proceedings on remand were not for that narrow a purpose, and that LUBA's instructions to the city called for, and the city's ensuing action amounted to, the establishment of standards by which the city made its decision on the variance application. Petitioners state that they "were entitled to * * * a hearing on remand even if only to argue the application of these fresh criteria to the facts in the record." Petitioners also note that LUBA remanded the matter to the city because it could not perform its review function in the absence of interpretive findings by the city, and that

> "[t]he underlying reality of [the first appeal to LUBA] was that the City did not have a definite, clearly articulated variance standard that could be recognized and addressed in a quasi-judicial setting by both the applicants and interested persons such as petitioners and, ultimately, by LUBA on review. Without such initial establishment of the applicable 'rules' meaningful participation before the City and LUBA is impossible."

We agree with petitioners.

However LUBA may have characterized what it

---

[2] This appeal was submitted on the record as to the city, because its brief was not filed within the time prescribed by ORAP 5.76.

required the city to do on remand, its basis for remanding was that the ordinance was ambiguous, further interpretation by the city was necessary and, without such interpretation, LUBA was unable to review the city's decision. Whether the city's supplemental findings are called "explanations of existing standards" or "new standards," petitioners could not have been in a better position to present an argument for denying the variance before those findings were made than LUBA was to review the decision. The plain import of LUBA's first opinion was that the city's decisional criteria needed clarification that only the city could provide. If that was a correct disposition,[3] petitioners were entitled to present an argument with the benefit of the city's clarification of its standards. *See Fasano v. Washington Co. Comm.,* 264 Or 574, 588, 507 P2d 23 (1973); *Feitelson v. Salem,* 2 Or LUBA 168 (1981).

Reversed and remanded to LUBA with instructions to remand to the city for further proceedings not inconsistent with this opinion.

---

[3] We are not called upon here to decide whether LUBA's disposition of petitioners' *first* appeal was correct. Although LUBA's stated purpose for the remand was for the city to make "explanatory *findings*" (emphasis supplied), it would have been at least equally plausible for LUBA to have regarded the question before it as a purely legal one — the interpretation of the ordinance. It is correct that the city was entitled to interpret its own ordinance in the first instance, *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 599-600, 581 P2d 50 (1978), but the fact that the city's interpretation was confusing or, arguably, wrong, does not mean that the city had not interpreted the ordinance. Moreover, it was clear from the fact that a variance was granted that the city did not interpret the ordinance as allowing variances only when necessary to make the beneficial use of property possible. (The applicants already had a house on their property.)